22-0074- *Justina Gabbert v. Richard T. Coyne, Esq., Trustee of Gerald Coyne Trust*

**FILED**

**June 13, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Walker, C.J., concurring, joined by Justice Bunn:

I agree with the majority that Petitioner's claim was properly dismissed. Petitioner couches her argument in terms of the 2006 writing as an amendment to the 2006 Original Trust, to be read together with the 2016 Amended and Restated Trust. Assuming arguendo that the 2006 writing is an amendment to the 2006 Original Trust, as alleged by Petitioner, I agree with the majority's well-reasoned analysis that *if* the 2006 writing was such an amendment, the 2016 Amended and Restated Trust revoked it and the 2016 Amended and Restated Trust is the sole, controlling document. While Petitioner's steadfast argument remains that the 2006 writing was an amendment, part of that argument is that she is entitled to the Waverly property because Respondent has *treated* the 2006 writing as a Section 2.3(B) memorandum and has distributed personal property consistent with its terms. Because I believe Petitioner's claim relative to the legal effectiveness of the 2006 writing in granting her the Waverly property fails regardless of whether that writing is classified as an amendment or as Section 2.3(B) memo, I concur in the result, but write separately because I find that the alternative argument presented by Petitioner merits some discussion.

Decedent executed the original trust on August 17, 2006, and handwrote, on August 22, 2006, a list beginning with the title "Gerald Coyne wishes to be carried out." For purposes of this separate opinion, let us assume it was a Section 2.3(B) memorandum

1

pursuant to the 2006 Original Trust. That provision (in the 2006 Original Trust instrument) states:

> B. NONBINDING WISHES. I may make a list or memorandum expressing how I wish certain items of my tangible personal property to be distributed. It is my hope that my wishes will be carried out, but the list or memorandum shall not be considered part of this trust or legally binding.

It then defines how tangible personal property is to be determined under the trust:

> C. TANGIBLE PERSONAL PROPERTY DEFINED. Tangible personal property does not include assets that, in the opinion of my Trustees, are held by me primarily for business or investment purposes. It does include such things as my personal effects, household goods and automobiles.

So, if the 2006 writing was a 2.3(B) memorandum, according to the plain terms of the trust, it distributed tangible *personal* property as that term is defined by the trust agreement but was neither part of the trust nor legally binding. Problematically, Petitioner seeks a disposition of *real* property under a provision that does not permit it, but the analysis cannot even reach the ability to distribute real property under a personal property provision when the 2006 writing has no legal significance post-2016 amendment and restatement.

The 2016 Amended and Restated Trust contains a similar provision to the 2006 Original Trust, with the pertinent change that a list or memorandum created pursuant to Section 2.3(B) to distribute tangible personal property becomes part of the trust and *is* legally binding. It contains the same definition of "tangible personal property." Importantly, however, the 2006 writing is not incorporated into or referenced by the 2016 Amended and Restated Trust, even tangentially. More than failing to mention the 2006 writing by name, the provision in the 2016 Amended and Restated Trust denies its

2

existence at all, contemplating a prospective "I *may* make a list or memorandum expressing how I wish certain items of my tangible personal property to be distributed." It does not read "I *did* make a list or memorandum." The 2006 writing lost any legal significance upon execution of the 2016 Amended and Restated Trust that failed to incorporate it by reference.

Petitioner's Complaint doesn't actually allege that the 2006 writing *is* a 2.3(B) memorandum, but rather points out the inequity in Respondent treating the 2006 writing as though it were a legally binding 2.3(B) memorandum as to all distributions but the ones made to her. Having concluded that the 2.3(B) memorandum is a legal nullity, whatever distributions have been made by Respondent consistent with that list can be seen as an attempt to effectuate the decedent's stated wishes, but it is not – whatever Respondent's understanding – *binding* that he do so.

And, irrespective of the legal validity of the 2006 writing as a 2.3(B) memorandum after the 2016 Amended and Restated Trust, the trust's terms simply do not provide for real property to pass by 2.3(B) memorandum. As aptly noted by the majority, Respondent's authority to administer the trust and change the terms of the trust in the name of equity or otherwise is dictated by the trust itself. The 2016 Amended and Restated Trust does not give Respondent the authority to distribute real property under Section 2.3(B) and it does not give Respondent the authority to read that provision flexibly or to change its terms. In other words, Respondent's authority is what the *trust* says his authority is, and

3

he does not have the authority to give Petitioner the Waverly property under the unambiguous terms of Section 2.3(B).

To this, Petitioner has offered that this Court could employ West Virginia Code § 44D-4-415 (2011)[1] to reform the terms of the trust to correct a mistake of fact or law (here, seemingly that this sophisticated businessman did not know the difference between real and personal property and despite having outright defined "tangible personal property" in his trust instrument). But, as the majority notes, Petitioner has waived that argument by failing to bring it to the circuit court. I agree with the majority insofar as the 2016 Amended and Restated Trust is the controlling document, and Petitioner can prove no set of facts that would entitle her to the Waverly Property, no matter how the 2006 writing is characterized. I am authorized to state that Justice Bunn joins in this concurrence.

---

[1] "The court may reform the terms of a trust, even if unambiguous, to conform the terms to the grantor's intention if it is proved by preponderance of the evidence that both the grantor's intent and the terms of the trust instrument were affected by a mistake of fact or law, whether in expression or inducement." W. Va. Code 44D-4-415.

4